JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIYARI CORRAL-BEY, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLUOR FLATIRON BALFOUR BEATTY DRAGADOS DBJV (DBA LINXS); and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-06903-MEMF (PVCx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF NO. 14] AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 22]** |

Before the Court is the Motion to Remand filed by Plaintiff Diyari Corral-Bey (ECF No. 14) and the Request for Judicial Notice filed by Defendants Fluor Flatiron Balfour Beatty Dragados DBJV (DBA LINXS) filed in support of its Opposition to the Motion to Remand (ECF No. 22). For the reasons stated herein, the Court GRANTS the Motion to Remand and GRANTS the Request for Judicial Notice.

/ / /

/ / /

/ / /

1

**BACKGROUND**

I. **Factual Background**[1]

Plaintiff Diyari Corral-Bey ("Corral-Bey") is a former employee of Defendant Fluor Flatiron Balfour Beatty Dragados DBJV d/b/a Linxs Constructors ("LINXS"). FAC ¶¶ 16, 20; Declaration of Kenneth N. Perry ("Perry Decl.") ¶ 1, ECF No. 1-6. LINXS operates in connection with the LAX Automated People Mover Project and employs several individuals, like Corral-Bey, in an hourly, non-exempt capacity in labor and construction. FAC ¶¶ 16, 20; Perry Decl., ¶¶ 3, 4.

LINXS employed Corral-Bey as a Laborer, Grade 4 in an hourly, non-exempt capacity from May 4, 2021, to July 20, 2021. FAC ¶ 20; Perry Decl., ¶ 4. For the duration of his employment, Corral-Bey was a member of Laborers Local Union 300 (the "Union"). Perry Decl., ¶ 4.

LINXS required Corral-Bey and all other similarly situated employees to "[w]ork without being reimbursed for their out-of-pocket expenses for the cost of personal cell phone usage, milage, and purchased tools necessary for business related purposes." FAC ¶¶ 13, 22. More specifically, LINXS required employees to purchase their own tools and use their own vehicles and cell phones to conduct their job duties without reimbursement. *Id.* ¶ 22.

II. **Procedural Background**

On June 22, 2022, Corral-Bey filed a putative class action against LINXS in Los Angeles County Superior Court. *See* Notice of Removal, ECF No. 1 ("Notice") ¶ 1. Corral-Bey filed an Amendment to the Complaint on August 2, 2022, to correct the name of the defendant. *Id.* at ¶ 2; *see* Amendment to Complaint, ECF No. 1-2. On August 30, 2022, Corral-Bey filed his First Amended Complaint. Notice ¶ 3; FAC The FAC alleges the following three causes of action: (1) failure to reimburse expenses pursuant to California Labor Code § 2802; (2) violation of the California

---

[1] The following factual background is derived from the allegations in Plaintiff's First Amended Complaint ECF No. 1-3 ("First Amended Complaint" or "FAC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

Business & Professions Code § 17200; and (3) penalties pursuant to California Labor Code § 2699, *et seq. See generally* FAC; *see also* Notice ¶ 3. LINXS was served with the operative complaint on August 30, 2023. Notice ¶ 4. On September 23, 2022, LINXS timely removed this action, arguing that because Corral-Bey's state law labor claims are preempted under the Federal Labor Management Relations Act ("LMRA"), the Court has federal question jurisdiction over the action. *See* Notice ¶¶ 9, 11–17.

Corral-Bey filed the instant Motion to Remand on October 21, 2022, arguing that there is no federal subject matter jurisdiction because his claims are not preempted by the LMRA. ECF No. 14 ("Motion" or "Mot."). On March 22, 2023, this Court ordered LINXS to submit a statement explaining its failure to file a timely opposition. ECF No. 20. On March 22, 2023, counsel for LINXS filed a statement indicating that the failure was an administrative oversight. ECF No. 23 at 2.[2] The Opposition, ECF No. 21 ("Opp'n"), and concurrent Request for Judicial Notice, ECF No. 22 ("RJN"), were filed the same day. Corral-Bey filed a Reply on March 29, 2023. ECF No. 25 ("Reply").

### III. Collective Bargaining Agreements at Issue

Although not stated in the First Amended Complaint, it appears that the terms and conditions of Corral-Bey's employment were governed by two agreements: the Master Labor Agreement ("MLA") and the Project Labor Agreement ("PLA"). Perry Decl., ¶¶ 4–6. According to LINXS, the MLA covers the relationship between the Union and a number of employers across a number of projects, and the PLA covers the specific employer and project at issue in this case. At the hearing in this matter, counsel for LINXS acknowledged that he could not point to any provision of either agreement that states this explicitly. He nevertheless maintained that it is well understood in the local industry that this is how these agreements work. Although Corral-Bey points out in its briefing that there is scant support for these assertions in the agreements themselves, Corral-Bey does not appear to dispute LINXS's general description of these agreements and their relationship to one another.

---

[2] While LINXS's Opposition is indeed untimely and thus subject to rejection by this Court, *see* C.D. Cal. L.R. 7-12, because the Court's preference to resolve matters on the merits, the Opposition is hereby accepted.

Also according to LINXS, where the PLA is silent on a term or condition, the MLA applies. Perry Decl., ¶ 6. Again, at the hearing, counsel for LINXS acknowledged that he could not point to any provision of either agreement that states this explicitly. Contrary to LINXS's assertion, the section of the PLA cited by LINXS in support of this proposition actually reads as follows:

> Section 4(a). The provisions of this Project Labor Agreement (including the Schedule As, which are the local Collective Bargaining Agreements of the signatory unions having jurisdiction over the work on the Project (as may be changed from time-to-time consistent with Article XIX, Section 2) and which are incorporated herein by reference) shall apply to the work covered by this Agreement, notwithstanding the provisions of any other local, area and/or National Agreements which may conflict with or differ from the terms of this Agreement. Where a subject covered by the provisions of this Agreement is also covered by a Schedule A, the provisions of this Agreement shall prevail. *Where subject is covered by the provisions of a Schedule A and is not covered by this Agreement, the provisions of the Schedule A shall prevail.*

Perry Decl. Ex. 2, Art. II, § 4(a) (emphasis added). Importantly, the PLA refers to "Schedule As" and "the local Collective Bargaining Agreements," but not the MLA. The MLA, Perry Decl., Exhibit 3, is entitled just that—"Master Labor Agreement" —not "Schedule A" or "Collective Bargaining Agreement." Although Corral-Bey points this out in his Motion, Mot. at 5, LINXS did not respond in its Reply. To the extent that LINXS is correct about the relationship between the MLA and the PLA, however, then it appears that this idea—that the broader MLA governs where the more specific PLA is silent—would follow as a logical matter.

It appears to the Court that it is virtually undisputed that the relationship between the Union and LINXS is governed by a collective bargaining agreement comprised of the PLA and the MLA. Because the parties refer to these two agreements as the "Collective Bargaining Agreements," for the avoidance of confusion, the Court will also refer to these two agreements collectively as the "Collective Bargaining Agreements" or the "CBAs."

/ / /

/ / /

/ / /

4

**REQUEST FOR JUDICIAL NOTICE**

**I.    Applicable Law**

Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts that are not subject to reasonable dispute because the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Adjudicative facts that may be judicially noticed include "*undisputed* matters of public record" which differs from "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Documents on file in federal and state court are undisputed matters of public record and therefore appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

**II.    Discussion**

LINXS requests that this Court take judicial notice of California Industrial Wage Order No. 16. Ex. A, ECF No. 22 ("Wage Order 16"). LINXS specifically requests that the Court take notice of Wage Order 16 for the purpose of introducing the fact that "[t]he collective bargaining agreements governing the employment of Plaintiff and all other allegedly aggrieved employees expressly incorporate the terms" of Wage Order 16. RJN at 1.

This request is unopposed. The Court may take judicial notice of "a record of a state agency not subject to reasonable dispute." *Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 1986). Accordingly, the Court GRANTS the request. However, as discussed further below, LINXS has merely stated without support that the CBAs at issue "expressly incorporate" the terms of Wage Order 16. As also discussed below, Corral-Bey asserts that a different wage order altogether applies—Wage Order 9. Taking judicial notice of Wage Order 16 is not a finding that LINXS is correct that the CBAs incorporate Wage Order 16.

/ / /

## MOTION TO REMAND

### I. Applicable Law

#### A. Removal under 28 U.S.C. § 1441

Removal is proper in civil actions when the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Federal question subject matter jurisdiction exists when claims are brought under a federal statute, 28 U.S.C. § 1331, such as the LMRA. However, if a district court finds at any time before final judgment that it lacks subject matter jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014).

A plaintiff's state law claims will become federal law claims if the claims are preempted by federal law. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). "Plaintiffs cannot avoid removal by artfully pleading only state law claims that are actually preempted by federal statutes such as section 301 of the Labor Management Relations Act." *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991) (internal quotation marks omitted). Thus, if a federal statute completely preempts a state law claim, that cause of action "necessarily becomes a federal one and can be removed." *Id.*

#### B. The Labor Management Relations Act, 29 U.S.C § 185

Section 301 of the LMRA provides that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

"By its terms, this provision confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998). A suit for

violation of a contract is "one filed *because a contract has been violated* . . . ." *Id.* at 657. The "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983).

"[I]f the resolution of a state-law claim depends upon the *meaning* of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles-necessarily uniform throughout the Nation-must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (emphasis added). However, Section 301 preemption "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409.

To determine whether a state-law claim is completely preempted in the labor context, the Ninth Circuit requires that courts apply the two-step test set forth in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053. Under the first step of the *Burnside* test, the court is to consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Burnside*, 491 F.3d at 1059. But if "the right exists independently of the CBA, [courts] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394(1987)). Under the second step of the Burnside test, the court is to consider whether the asserted state law claim is "substantially dependent" on the terms of a CBA—that is, whether a court must *interpret*, as opposed to merely *look to*, the CBA to resolve the claim. *Id.* at 1060; *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 693 (9th Cir. 2001). "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside*, 491 F.3d at 1059–60.

The Supreme Court has made clear, however, that even in the labor context, "the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that

the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Therefore, "when the employer raises only a *defense* that requires a court to interpret or apply a collective-bargaining agreement," the claim is not preempted. *Id.* at 398 (emphasis added). This is true even though "when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives." *Id.* at 398. This is because "Congress has long since decided that federal defenses do not provide a basis for removal." Id. at 399.

## II.      Discussion

Corral-Bey seeks to remand this case to the Los Angeles County Superior Court on the grounds that LINXS has not demonstrated that this action is subject to federal question jurisdiction. *See generally* Mot. Specifically, Corral-Bey argues that the "notice of removal does not satisfactorily establish [that] Plaintiff and employees were covered by the produced collective bargaining agreements ("CBAs") [and that] Plaintiff is seeking to vindicate rights under state law that are not created by or substantially dependent on the CBAs." Mot. at 2.

LINXS argues that, as members of the Union, Corral-Bey and the putative class members' Labor Code section 2802 claim requires analysis of the Collective Bargaining Agreements, causing it to be completely preempted under Section 301. Opp'n at 2. LINXS further states that the remaining claims are subsequently preempted due to their "relationship to the substantive underlying claim." Id. at 2.

As further explained below, the Court concludes that Corral-Bey's Labor Code section 2802 claim does not require analysis of the CBA; therefore, the claim is not preempted by the LMRA and federal jurisdiction is not established.

/ / /

/ / /

/ / /

### A. Corral-Bey's Decision to Not Reference the Purported CBAs in the FAC Does Not End the Court's Analysis.

In the Notice, LINXS argues that the Complaint is "artfully" pleaded as Corral-Bey failed to discuss that he and the proposed class "were members of the Union, or that the PLA and the MLA governed their employment." Notice ¶ 17. As such, LINXS argues that Corral-Bey's "failure to reference either the MLA or the PLA in the FAC is irrelevant to the Court's analysis" because the Court may consider outside documents—such as collective bargaining agreements—on a motion to remand. Opp'n at 5–6; Notice ¶18. In response, Corral-Bey contends that the choice to omit any reference to the CBAs was deliberate as he seeks to "vindicate his and other employees' rights under the California Labor Code . . . and Business & Professions Code, *not the CBA*." Mot. at 7 (emphasis added).

Although Corral-Bey, as the plaintiff, is the "master of the complaint," *Caterpillar,* 482 U.S. at 398-399, the doctrine of complete preemption nevertheless requires that this Court answer the two questions posed by the *Burnside* test to determine whether his claim is completely preempted under Section 301. For that reason, this Court must consider the purported CBAs here.

### B. The Parties Concede That Corral-Bey's Labor Code Section 2802 Claim Does Not Involve a Right That Exists Solely As a Result of The CBAs.

Under the first step of the *Burnside* test, this Court must determine whether Corral-Bey's Labor Code Section 2802 claim involves a right that exists "solely as a result of the [CBAs]." *Burnside*, 491 F.3d at 1059. The parties appear to agree that Corral-Bey's claim for failure to reimburse pursuant to Labor Code section 2802 does not involve a right that exists solely as a result of the CBAs. *See* Opp'n at 7–8; Reply at 2. Therefore, the Court moves on to the second step of the *Burnside* test, namely whether the right involved in Corral-Bey's claim is nevertheless substantially dependent on analysis of the CBAs.

/ / /

/ / /

**C. Because the Court Need Only Look To—and Not Interpret—the CBAs in Order to Evaluate Corral-Bey's Labor Code Section 2802 Claim, the Claim is Not Completely Preempted Under Section 301.**

Under the second step of *Burnside*, "to determine whether a state law right is 'substantially dependent' on the terms of a CBA . . . the [Supreme] Court directs us to decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA . . . . If the latter, the claims is preempted; if the former, it is not." *Burnside*, 491 F.3d at 1060 (internal citations omitted). To prevail on this argument, defendant cannot simply allege "a hypothetical connection between the claim and the terms of the CBA." *Cramer*, 255 F.3d at 691. "[R]ather, the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994)). To satisfy the requirements of section 301 preemption, any interpretation must go beyond simply looking to or consulting the CBA. *See id.*; *Burnside*, 491 F.3d at 1060. The court must keep in mind that "[t]he plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691.

The parties dispute whether Corral-Bey's state law claim requires this Court to interpret—as opposed to merely look to—the CBAs. LINXS argues that there are two provisions of the MLA which this Court must interpret in order to adjudicate Corral-Bey's state law claims: (1) the provision of the MLA that sets forth the wage rates; and (2) the provision of the MLA concerning travel.

The Court finds LINXS's arguments are unavailing.

**1. The Cell Phone Reimbursement Claim Does Not Require Interpretation of the MLA's Wage Rates**

LINXS's first argument goes as follows: (1) Wage Order 16 applies to the CBAs at issue; (2) Wage Order 16 creates an exception to Labor Code Section 2802; and (3) because of how that exception is worded, in order to determine whether that exception applies to Corral-Bey and the

10

Class Members, this Court will have to interpret the CBAs. The Court will address each of these in turn.

As a preliminary matter, LINXS has failed to conclusively demonstrate that Wage Order 16 even applies. Although it strenuously asserts that the CBAs "expressly incorporate" Wage Order 16, it is unable to point to a provision of the CBAs that does this. What it relies on is the fact that Wage Order 16 applies to the construction industry (in contrast to Wage Order 9 which applies to the transportation industry) and the grievance process contained within the CBAs makes reference to Wage Order 16 and appears to assume that it is the Wage Order that applies. MLA at 63 ("In addition, any dispute, complaint or grievance concerning a violation of, or arising under, [Wage Order 16] which is subject to the Procedure for Settlement of Grievance and Disputes in Article VI *by operation of Wage Order 16* and exemptions therein . . . shall remain subject only to Article VI and not this Appendix C." (emphasis added)). Despite this weak support, the Court will nevertheless assume for the sake of argument that Wage Order 16 does apply.

Next, it appears that LINXS is correct that Wage Order 16 creates an exception to Labor Code 2802. The relevant section of the wage order reads as follows:[3]

> 8. UNIFORMS AND EQUIPMENT
> . . . .
> (B) When the employer requires the use of tools or equipment or they are necessary for the performance of a job, such tools and equipment shall be provided and maintained by the employer, *except that an employee whose wages are at least two (2) times the minimum wage may provide and maintain hand tools and equipment customarily required by the particular trade or craft in conformity with Labor Code Section 2802.*

It does appear to provide that for certain employees—namely those whose wages are at least two times minimum wage—those employees are required to provide and maintain their own tools and

---

[3] Wage Order 9 appears to contain a nearly identical exception; it just doesn't explicitly reference Labor Code Section 2802:

> (B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, *except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft*.

equipment *without reimbursement* as opposed to other employees, for whom Labor Code Section 2802 requires that they be reimbursed.[4]

LINXS argues that this exception covers all tools and equipment that generate Labor Code Section 2802 "expenditures," including cell phones. Opp'n at 7-8. Since Corral-Bey's claim is that his cell phone generates Labor Code Section 2802 "expenditures," it would appear to be among the "tools or equipment" referenced in the wage order. But as Corral-Bey points out, the Ninth Circuit has already determined that cell phone charges do not fall within this provision of Wage Order 16 *even though they do fall within Labor Code Section 2802*:

> Although section 2802 covers "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," Cal. Lab. Code § 2802(a), Wage Order 16-2001 covers only "tools or equipment," Cal. Code Regs. tit. 8, § 11160. Indeed, many expenses for which class members sought and recovered reimbursement at trial, including insurance, *cellphone charges*, dump fees, and mileage/fuel, are *covered only by section 2802—not by Wage Order 16-2001's "tools and equipment" provision.*

*Bowerman v. Field Asset Servs.*, 60 F.4th 459, 472 (9th Cir. 2023) (emphasis added). Therefore, as a matter of law, the Wage Order 16 exception does not apply in any event.

In addition—even assuming arguendo that Wage Order 16 would apply and that its exception would cover cell phone charges, at best, Wage Order 16 requires that this Court *look to*—but not *interpret*—the CBAs. LINXS argues that to determine whether Corral-Bey or any Class Member falls within the exception, it must determine whether the employee is "an employee whose wages are at least two . . . times the minimum wage." Opp'n at 8 (relying on Wage Order 16, Section 8(b)). And, according to LINXS, in order to determine whether Corral-Bey or any Class Member is such an employee, the Court must turn to the CBAs which set their wages and *interpret* the CBAs to determine their wages. Opp'n at 8. As LINXS points out, the wages are set forth in wage scales contained within the CBAs, namely Article XIX of the MLA. Opp'n at 8. But the wage scales

---

[4] Corral-Bey asserts, with little support, that the reference to "tools and equipment" in Wage Order 16 does not include the cell phone that he is concerned about. The Court gives little weight to this argument given Wage Order 16's reference to Labor Code Section 2802. It appears to the Court that this exception covers all tools and equipment that generate Labor Code Section 2802 "expenditures." Since Corral-Bey's claim is that his cell-phone generates Labor Code Section 2802 "expenditures," it would appear to be among the "tools or equipment" referenced in the wage order.

LINXS refers the Court to—found in Section K of Article XIX of the MLA—are in reality a simple chart setting forth the hourly wage for various categories of employees and work. *See* MLA at 43-48. No *interpretation* of this simple chart is needed to determine hourly wage applies to Corral Bey or any Class Member. Therefore, the Court need only *look to* the wage scales to determine whether Corral-Bey's wages or that of any Class Member were double minimum wage or not.[5]

And finally, this purported Labor Code exception allegedly found in Wage Order 16 appears to be a *defense* along the lines of which *Caterpillar* held is not a basis for removal. *Caterpillar*, 482 U.S. at 398–99 ("Caterpillar asserts . . . a defense claiming that, in its collective-bargaining agreement, its unionized employees waived any pre-existing individual employment contract rights. . . . . But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule . . . . [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.")

Therefore, for the foregoing reasons, the Court finds that Corral-Bey's claim is not substantially dependent on analysis of the CBAs.

### 2. The Travel Reimbursement Claim Does Not Require Interpretation of the MLA's Travel Provisions

LINXS's second argument—that the travel provisions must be interpreted to determine whether they exclude reimbursement—is similarly ineffective. Governing law dictates that frivolous references to a CBA by a defendant do not constitute a requirement that the court interpret the CBA. *See Cramer*, 255 F.3d at 691 ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim."). Here, simply looking at the referenced section

---

[5] Counsel for Corral-Bey also pointed out at the hearing that one could simply look to Corral-Bey's pay stubs to determine his wages. Although counsel for LINXS asserted that the application of Wage Order 16 is determined by the wage scale—i.e., what the employee was entitled to be paid—and not the actual wages—i.e., what the employee was actually paid, no support was provided for this. The Court need not resolve this dispute given that even if LINXS is correct, as discussed above, the Court is still only looking to the CBAs, not interpreting them, to determine what Corral-Bey is paid.

leads this Court to the unremarkable conclusion that it does not say that travel expenses will not be reimbursed, and it certainly does not attempt to waive state law in this regard.[6] So no interpretation is required. [7]

For the foregoing reasons, LINXS has failed to show that this Court has subject matter jurisdiction, and therefore these claims must be remanded to state court.

### D.  Corral-Bey's Remaining Claims Are Not Subject to Supplemental Jurisdiction.

Finally, LINXS argues that Corral-Bey's remaining claims for violation of the California Business and Professions Code section 17200 and penalties pursuant to Labor Code section 2699 are part of the same case or controversy as the Labor Code section 2802 claim and are thus subject to supplemental jurisdiction under 28 U.S.C. § 1367(a). Opp'n at 11–12. Because the Court finds that the allegedly preempted claims must be remanded to state court, there is no basis for this Court to exercise supplemental jurisdiction over the remaining claims.

/ / /

---

[6] The Court notes that Corral-Bey does not attempt to argue that this right is unwaivable.

[7] Corral-Bey directs the Court to *Gonzalez Quiroz v. Coffman Specialties, Inc.*, No. 3:20-cv-01779-CAB-AHG, 2020 WL 7258725 (S.D. Cal. Dec. 10, 2020) which takes a similar approach. In circumstances similar to the instant case, the plaintiff filed a putative wage and hour class action complaint in San Diego Superior Court alleging violations of a number of subsections of the California Labor Code. *Id.* at *1. The defendant removed the case based on federal question jurisdiction premised on LMRA preemption. *Id.* Specifically, the defendant argued that the plaintiff neglected to mention that he was a member of a labor union or that he and the putative class was covered by a collective bargaining agreement and relied on the existence of the CBA in defense of removal. *Id.* However, upon examination of the second *Burnside* factor, the court found that because the plaintiff had only raised claims under California state law—which may implicate analysis of similar facts as those needed under a claim brought pursuant to a CBA— his claims did not rise to the level of preemption. *Id.* at *4. The court further held that the fact that the defendant raised the CBA as a defense to the plaintiff's state law claims did not automatically transform the claims into those brought under the CBA or claims substantially reliant on the CBA. *Id.*

LINXS, on the other hand, directs the Court to *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-cv-07874-LB, 2022 WL 161892 (N.D. Cal. Jan. 18, 2022). In that case, the court found that the plaintiff's wage and hour claims were preempted by section 301 of the LMRA because resolution would necessitate consideration of the CBAs. *See id.* at *5. The court also found that the plaintiff's Labor Code section 2802 claim was preempted because the plaintiff's claim necessitated an interpretation of the scope, meaning, and application of the PLA and MLA. *Id.* In addition to being non-binding, the Court notes that this case appears to be distinguishable as it was undisputed that the PLA and MLA contained detailed provisions concerning the same matters that were the subject of the state law claim.

**CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. LINXS's Request for Judicial Notice is GRANTED; and
2. Corral-Bey's Motion to Remand is GRANTED. This case shall be remanded to the Los Angeles Superior Court.

**IT IS SO ORDERED.**

Dated: September 18, 2023

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge